IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-_____

THE STATE OF COLORADO, by and through THE COLORADO
DEPARTMENT OF LABOR AND EMPLOYMENT, DIVISION OF
VOCATIONAL REHABILITATION and its BUSINESS ENTERPRISE
PROGRAM,

      Plaintiff,

v.

THE UNITED STATES OF AMERICA, by and through THE HONORABLE
MARK ESPER, SECRETARY OF DEFENSE, and THE HONORABLE
BARBARA M. BARRETT, SECRETARY OF THE AIR FORCE,

      Defendants.

---

## COMPLAINT AND REQUEST FOR TEMPORARY AND PRELIMINARY INJUNCTIVE RELIEF

---

The STATE OF COLORADO, by and through the Colorado Department of Labor
and Employment, Division of Vocational Rehabilitation and its Business
Enterprise Program ("Colorado"), and files this Original Complaint and Request
for a Temporary Restraining Order and Preliminary Injunctive Relief seeking,
inter alia, to enjoin Defendants, the UNITED STATES OF AMERICA, from
proceeding with any actions under Solicitation No.: FA255020R0010 (the
"Solicitation") (or performance of any contract award thereto) for dining facilities
services at Schriever Air Force Base ("Schriever AFB"), Colorado, until such

time as the arbitration proceeding initiated by the STATE OF COLORADO pursuant to the Randolph-Sheppard Act (the "Act"), 20 U.S.C. § 107 *et seq.* is concluded.

## I. SUMMARY

1.      A blind vendor licensed by Colorado has operated the dining facility contracts at Schriever AFB for over 15 years and most recently under a 2015 contract that Defendants recognized was subject to the Act. Pursuant to the Act, blind vendors licensed by Colorado have a prior right to operate the military dining facilities contract at Schriever AFB.  The Air Force is charged with establishing Randolph-Sheppard vending facilities, such as cafeterias, wherever feasible. 20 U.S.C. § 107(b)(2).  The feasibility standard for cafeterias is if the blind vendor can provide satisfactory service at a reasonable price. *Id.* at 107d-3(e).

2.      Evaluations have now concluded, and on August 7, 2020, Schriever AFB provided notice that Colorado would not be awarded the new dining facilities contract ("Contract"), and it was awarded to another bidder.

3.      Colorado participated in debriefings with Schriever AFB that concluded on August 18, 2020. Based on the information provided after the award, it became clear that Schriever AFB found that Colorado would provide quality service, but ignored its own conclusion that Colorado could provide this

2

service at a fair price, and awarded the contract to the lowest bidder in violation of the Act. It even improperly inflated the price of Colorado's bid by 10%. As a result, Colorado determined that Schriever AFB violated the Act in this Solicitation and, on August 20, 2020, initiated an arbitration challenging the award to another bidder pursuant to the Act.

4.     Counsel for Colorado inquired if Schriever AFB would delay any transition to a new contractor until the arbitration was concluded, and Schriever refused to delay the transition that is scheduled to occur on August 28, 2020.

5.     Colorado brings this action seeking injunctive relief to prevent Defendants from continuing their ongoing procurement or transitioning the dining facilities to another contractor in connection with the Solicitation for the dining services contract at Schriever AFB until such time as the Department of Education arbitration required by the Act is concluded.  Colorado may need to seek a Temporary Restraining Order if Schriever AFB did not exercise its discretion to delay the transition pending a hearing on a preliminary injunction.

6.     Colorado will be irreparably harmed if the contract is transitioned prior to the conclusion of arbitration initiated by Colorado with the Department of Education to confirm the Act's applicability to the new contract. Accordingly, Colorado is entitled to an injunction until the conclusion of the Department of

Education arbitration.

## II. PARTIES

7.      Plaintiff, the State of Colorado, by and through the Colorado State Business Enterprise Program, is a Colorado state agency and the State Licensing Agency ("SLA") under the Randolph-Sheppard Act, 20 U.S.C. §§ 107 *et seq.* and its implementing regulations.

8.      Defendant, the UNITED STATES OF AMERICA, is acting by and through the Honorable Mark T. Esper, acting Secretary of Defense, and the Honorable Barbara M. Barrett, Secretary of the Air Force. Secretaries Esper and Barrett, are acting by and through, Mr. William Ray, the Contracting Officer assigned to this procurement. Secretaries Esper and Barrett will be served with a copy of the instant Complaint by delivering same to the United States Attorney for the State of Colorado. Additionally, service is to be accomplished on Defendants by sending a copy of the summons and complaint via certified mail to (1) the civil process clerk at the United States Attorneys' Office, (2) the Attorney General of the United States in Washington D.C., and (3) to Secretaries Esper and Barrett.

## III. JURISDICTION

9.      As recently affirmed by the Tenth Circuit, jurisdiction is proper in

4

this Court under 28 U.S.C. §§ 1346, 1331 (arising from the

Randolph-Sheppard Vending Facility Act, 20 U.S.C. §§ 107 *et seq.*) and 5

U.S.C. §§ 701 *et seq.* (judicial review of federal agency action). *See Kansas v.*

*SourceAmerica*, 874 F.3d 1226, 1251 (10th Cir. 2017).

10.    Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331

as this civil action arises under the laws of the United States, namely the

Randolph-Sheppard Act, 20 U.S.C. §§ 107 *et seq.*, as amended; and applicable

federal regulations.

11.    Jurisdiction is also proper in this court under the All Writs Act, 28

U.S.C. § 1651, which authorizes federal courts "to issue all writs necessary or

appropriate in and of their respective jurisdictions and agreeable to the usages

of principles of law."

12.    The arbitration initiated by Colorado pursuant to the Act does not

act as a bar to this Court's jurisdiction over the issues presented in this

Complaint. *See Kentucky v. United States, ex rel. Hagel*, 759 F.3d 588, 597-599

(6th Cir. 2014) (finding that completing arbitration under the Act is not a

jurisdictional prerequisite). Additionally, failure to complete the arbitration

before the filing of this Complaint is not a jurisdictional prerequisite either. *Id.*

at 599-600.

13.    Venue is proper in this district pursuant to 28 U.S.C. § 1331 in that a substantial part of the events giving rise to this action occurred in Colorado. Specifically, the contract sought to be awarded will be performed at Schriever AFB.

## IV. NATURE OF THE CASE

14.    The Randolph-Sheppard Vending Facility Act, 20 U.S.C. §§ 107 *et seq.* was passed by Congress to provide blind persons with gainful employment and to enlarge their economic opportunities. *See* 20 U.S.C. §§ 107(a) (describing the Act's purpose and authorization). Pursuant to the Act, federal agencies have an affirmative obligation to establish vending facilities for blind licensees on all federal property to the extent the facilities would not adversely affect the interests of the United States. *Id.* at § 107(b).

15.    In furtherance of these objectives, Congress mandated that priority be given to the appropriate SLA and its licensed blind vendor on all contracts for cafeteria operation services on Federal property. *See* 20 U.S.C. §§ 107(b). These contracts are issued in the name of the SLA and operated by a designated blind vendor. Colorado State Business Enterprise Program is the SLA for Colorado under the Act and Mr. John "Jack" Riley is the licensed blind vendor chosen by Colorado. The blind vendor has a prior right to operate these contracts pursuant

6

to the Act.

16.     The current contract is a 5-year contract for food services awarded to Colorado in 2015.

17.     Schriever AFB has recognized the Act's priority for cafeterias applies to its dining facilities contracts for food preparation and dining services for the last 15 years, and Colorado has obtained the Schriever AFB dining facilities contracts since that time. Colorado obtains the contracts at Schriever AFB through a competitive solicitation pursuant to the Act. The contracts are operated by licensed blind vendors.

18.     The Act provides Colorado should be awarded the contract if it submits a technically acceptable bid for a fair price; it does not have to submit the lowest priced bid. Colorado was denied this statutory advantage because it was required to submit the lowest priced bid to receive the award.

19.     The Act provides that if Colorado determines that Defendants are failing to comply with the provisions of the Act, Colorado may file a complaint for arbitration with the Secretary of Education.

20.     By letter dated August 20, 2020, Colorado initiated its complaint for arbitration with the DOE Secretary challenging the Defendants' decision to eliminate the Randolph-Sheppard opportunities at Schriever AFB.

7

## V. FACTUAL AND PROCEDURAL BACKGROUND

### A.      Randolph-Sheppard Act.

21.     Pursuant to the Act, federal agencies have an affirmative obligation to establish vending facilities for blind licensees on all federal property, such as the military dining facilities on Schriever AFB, to the extent the operation of these facilities would not adversely affect the interests of the United States. *See* 20 U.S.C. § 107(b).

22.     The Act allows Defendants to directly negotiate with Colorado for dining facilities contracts without competitive procurement. If direct negotiations are not conducted, then the Act requires Defendants to conduct a solicitation pursuant to the Act's competitive provisions to determine if the operations can be provided at a reasonable cost with food of a high quality when compared to that currently provided. *See* 34 C.F.R. §§ 395.33(a); (d).

23.     If the SLA provides a proposal judged to be within a competitive range, then the executive agency awards the contract to the SLA. *See* 34 C.F.R. §§ 395.33(b). This is the process by which Colorado secured numerous contacts on Schriever AFB since 2000.

24.     Colorado has operated dining facilities contracts at Schriever AFB for the last 15 years and there is no question they can provide quality service.

8

Indeed, Colorado's proposal was deemed technically acceptable. Similarly, Colorado has been providing the dining facility services at a reasonable cost since 2000, and its bid on the Solicitation was less than the independent government estimate.

25.     The Act further requires an arbitration through the DOE Secretary whenever the SLA decides that an executive agency failed to comply with the Act or "any regulations issued thereunder." 20 U.S.C. §107d-1(b); *see also,* 20 U.S.C. §107d-2.  Colorado made that determination and requested arbitration.

## B.     Solicitation.

26.     On June 23, 2020, Defendants issued a procurement for food services at Schriever AFB under the Solicitation. As in the many previous food services contracts at Schriever AFB performed by Colorado, the Performance Work Statement for this Solicitation described the work required of the contractor. The services required for the Solicitation are nearly identical to the ones listed in previous performance work statements for contracts to perform the food services at Schriever AFB.

## C .   Violations of the Act, its implementing regulations, and the resulting impact to Colorado and its Blind Vendor.

27.     Under the Act, Schriever AFB was obligated to give priority to Colorado and its vendor to operate the dining facilities contract. 20 U.S.C. § 107

9

and 34 C.F.R. § 395.33. The feasibility standard for cafeterias is if the blind vendor can provide satisfactory service at a reasonable price. *Id.* at 107d-3(e).

28.     In its debriefing, Colorado learned that the Air Force acknowledged the satisfactory quality of its services and stated that Colorado's proposed price was 1.53% below the independent government estimate. Schriever AFB also evaluated Colorado's proposed price as "affordable and balanced." Despite that determination, Schriever AFB failed to place Colorado in a competitive range, and in fact did not even establish a competitive range, but instead simply awarded the Contract to the lowest bidder. Schriever AFB even improperly added a 10% HUBZone preference to Colorado's price to justify its decision.

29.     Colorado avers that, in violation of the Act, Defendants improperly added a 10% HUBZone preference to Colorado's price, and failed to establish a competitive range to determine if Colorado had a fair price, not the lowest price.

30.     Profits from the Schriever AFB food services contract constitute the primary source of business income for Riley.

31.     Losing the Schriever AFB contract would mean that Riley would have to shut down his business.

32.     Additionally, pursuant to the Act, 20 U.S.C. § 107b(3), Colorado receives from Riley a set-aside fee based upon Riley's profits from the operation

of the Schriever AFB food services contract. These set aside funds derived from the Schriever AFB food services contract are used by Colorado to support other programs for the blind vendors in Colorado, such as the repair and replacement of outdated equipment for its blind vendors. The food services contract at Schriever AFB is by far the largest contract available to Colorado under the Act and the fees it generates for Colorado cannot be replaced.

33.     There is an advantage to bidding on a contract as the incumbent for that contract. The incumbent knows the most about the contract, has experience working with the contract and has a team assembled to work on the contract. The incumbent has no start-up cost to assemble that team.

34.     Should the contract be awarded to another bidder, Colorado will lose a substantial number of team members from its team of workers that are currently performing under the incumbent contract. Colorado will lose a team of valued individuals that took years for it to develop and who have assisted Colorado in successfully operating at Schriever AFB for over 15 years. If Colorado is not granted an injunction, Colorado will have substantial recruiting costs and rehiring costs as it attempts to rebuild its team after the conclusion of the pending arbitration. In all probability, Colorado will not be able to restore its team to its original composition and experience.

35.     Not only will Colorado lose a highly skilled workforce, but it will also lose the advantage it earned as an incumbent contractor. These losses would significantly impact its competitiveness on future procurements. As a result, upon any future solicitations, Colorado would need to increase its pricing to cover phase-in costs and include in any future proposals the increase in unemployment insurance rates that it will most certainly experience. Ultimately, these losses will only serve to make Colorado less competitive on any future solicitations, thereby significantly impairing its future business prospects.

36.     Colorado would also be irreparably harmed if the transition moves forward on August 28 because the transition would permit the new company to learn Colorado's confidential operational information and trade secrets. As part of the transition, the new contractor will be permitted to physically observe Colorado's operations, talk to employees and management, and obtain other confidential operational information, including confidential cost control and scheduling measures that it would not otherwise be able to obtain. This would prejudice Colorado and its teaming partner as that information could be used to their disadvantage in future competitive bidding situations.

37.     Colorado has no adequate remedy at law for being wrongfully

12

deprived of the Schriever AFB food services contract.

38.     Colorado will suffer irreparable harm if award of the contract is made to another offeror in violation of the Act and implementing regulations. Absent injunctive relief, this irreparable harm manifests itself in at least one or more of the following forms: (i) Colorado will be wrongfully deprived of a meaningful arbitration in accordance with the Act especially where, as here, Colorado is likely to regain eligibility for its priority under the Act to this contract award; (ii) revenue from the food services contract at Schriever AFB represents Riley's primary income; (iii) the set-aside that Colorado receives from net proceeds of Schriever AFB food services contract will no longer be available to Colorado and cannot be replaced to support other Colorado programs critical to the Colorado blind, and Colorado and Riley will lose the advantages to bidding on a new contract as the incumbent.

### D.   Arbitration demand.

39.     By letter dated August 20, 2020, Colorado initiated the required arbitration by filing a request for arbitration with the United States Department of Education, Rehabilitation Services Administration.  The arbitration demand challenges Defendants' failure to establish a competitive range, into which Colorado would have surely fallen, where meaningful discussions with Colorado

would have easily determined that it was possible for Colorado to provide a fair price and Defendants' failure to properly apply the Randolph-Sheppard priority to the Solicitation when it added a 10% HUBZone increase to Colorado's price.

**E.    Injunctive relief requested is necessary to adequately address the irreparable harm.**

40.    Based on allegations of this Complaint, Plaintiff has the substantial likelihood of success on the merits that:

a)    Defendants violated the Act by wrongfully added a 10% HUBZone preference to Colorado's proposed price;

b)    Defendants violated the Act by failing to establish a competitive range and failing to award the contract to Colorado.

c)    Without injunctive relief, Colorado has no adequate remedy at law when they prevail in the arbitration;

d)    Defendants must be enjoined from proceeding with the Solicitation until the DOE arbitration has been conducted and decision rendered subject to judicial review as to whether Defendants violated the Act.

41.    Defendants will not be harmed by an injunction because Colorado, through Riley, is currently performing quality food service at a fair price at Schriever AFB and will continue to do so without interruption until a lawful contract award can be made in accordance with the subject Solicitation and the Act.

42.    An injunction serves the public interest by enforcing the arbitration

14

rights granted by Congress under the Act, by furthering the purposes of the Act in preserving the status quo until a decision by the DOE arbitration panel, by preserving this Court's power of review under the Administrative Procedure Act ("APA") of the arbitration decision which is a "final agency action" for purposes of the APA, and by ensuring that contract awards by federal agencies are lawfully made.

## VI. COUNT I:
### Colorado is Entitled to Injunctive Relief Pursuant to the All Writs Act.

43.     The allegations set forth in the preceding paragraphs of this Complaint are incorporated by reference herein in their entirety into Count I.

44.     The All Writs Act, 28 U.S.C. § 1651, authorizes federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." While there is some general hesitancy to review non-final administrative action, courts have found authority under the Act to issue writs of mandamus and injunctions to agencies to compel action or suspend the enforceability of preliminary decisions while parties pursue administrative appeals. *See* 28 U.S.C. § 1651; *see also* 16 Charles Alan Wright et al., FEDERAL PRACTICE AND PROCEDURE § 3942 (3d ed. 2012) ("A substantial number of cases recognize power in the courts of appeals to

15

intervene under the All Writs Act without the pretense of characterizing agency action as final." (footnote omitted)).

45.     Here the Act mandates that SLAs resolve their disputes with executive agencies through arbitration with the DOE Secretary. 20 U.S.C. §107d-1(b); *see also*, 20 U.S.C. §107d-2. The Act further says that after the DOE arbitration panel gives notice, conducts a hearing and renders a decision, that decision is a final agency decision subject to review under the APA. *See* 20 U.S.C. §107d-2(a).

46.     Therefore, once the DOE arbitration panel issues its decision, this Court would have jurisdiction over that DOE arbitration decision as final agency decision subject to APA review. 5 U.S.C. §§701-706.

47.     The United States Supreme Court recognized in *Arrow Transportation Co. v. Southern Railway* the All Writs Act's power to "preserve the court's jurisdiction or maintain the status quo by injunction pending review of an agency's action." 372 U.S. 658, 671 n.22 (1963).

48.     For a district court to issue a writ under the All Writs Act, three elements must be satisfied. *Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 380, 124 S. Ct. 2576, 159 L. Ed. 2d 459 (2004). First, "the party seeking issuance of the writ [must] have no other adequate means to attain the relief he desires."

*Id.* This condition is "designed to ensure that the writ will not be used as a substitute for the regular appeals process." *Id.* "Second, the party seeking the writ must meet its 'burden of showing that [its] right to issuance of the writ is clear and indisputable,'" *Id.* at 381. Third, even if the first two prerequisites have been met, the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances. Here, Colorado meets all three requirements.

49.     First, as alleged above Colorado and its blind vendor have no adequate remedy should the Defendants proceed with award and begin contract performance. The loss of the Schriever AFB contract resulting from an improper application of the Act will cause irreparable harm to both Colorado and its blind vendor.

50.     Second, there are clear violations of the Act and its implementing regulations.

51.     Third, the injunctive relief sought herein is necessary to preserve the *status quo* and allow Colorado to exercise its statutory rights under the Act. This is precisely the situation which requires this Court's discretion to prevent an otherwise improper award and allow Colorado to seek a proper remedy under the Act.

17

## VII. COUNT II:
## Colorado is Entitled to Injunctive Relief Based on Clear and Prejudicial Violations of the Act.

52.     The allegations set forth in the preceding paragraphs of this Complaint are incorporated by reference herein in their entirety into Count II.

53.     Pursuant to FED. R. CIV. P. 65, Colorado asks this Court to issue a temporary restraining order and preliminary injunction enjoining Defendants from proceeding with the procurement while the arbitration is pending before the Department of Education.

54.     In deciding whether to grant preliminary injunctive relief, the Court considers four factors: (1) Plaintiff's likelihood of success on the merits; (2) whether Plaintiff may suffer irreparable harm absent the injunction; (3) whether granting the injunction will cause harm to others; and (4) the impact of an injunction upon the public interest. *Fish v. Kobach*, 840 F.3d 710, 723 (10th Cir. 2016); *Petrella v. Brownback*, 787 F.3d 1242, 1257 (10th Cir. 2015); *Att'y Gen. of Oklahoma v. Tyson Foods, Inc.*, 565 F.3d 769, 776 (10th Cir. 2009). No single factor is dispositive. Trial courts are to balance the four factors and not consider them prerequisites to the issuance of a preliminary injunction.

### A.     Colorado is likely to succeed on the merits of the Arbitration.

#### 1.     *The Solicitation is subject to the Act.*

18

55.     Colorado is likely to prevail on the merits of the arbitration. The violations of the Act are clear and are proven by the undisputed actions of the Defendants.

56.     The Department of Defense has explained that historically, the military Services have operated dining facilities using in-house (active duty or DOD civilian) personnel. With the end of the Cold War and DOD's goals to downsize and reshape force structures, DOD began to outsource some of the services that support the operation of military dining facilities. Because of the 1974 Amendments to the Act and the addition of "operation of cafeterias" to the scope of "vending facilities," SLAs like Colorado were awarded contracts for the operation of military dining facilities.

57.     DOD maintains that despite these dining facility contracts with civilian companies, DOD retains the overall management role for operation of military dining facilities. The dining facility contracts are operated jointly by the civilian contractor and the military installation.

### 2.     *Schriever should have established a competitive range and awarded Colorado the contract.*

58.     The Air Force is charged with establishing Randolph-Sheppard vending facilities, such as cafeterias, wherever feasible.  20 U.S.C. § 107(b)(2).

59.     The Air Force violated its duty to fairly determine if it were feasible

for Colorado and its blind vendor to operate the Contract.

60.     The feasibility standard for cafeterias is if the blind vendor can provide satisfactory service at a reasonable price. *Id.* at 107d-3(e).

61.     Satisfactory service is not an issue.

62.     "The [Act's] regulations place a high degree of trust in contracting officers to assure that they negotiate and award contracts consistent with the intent of the Act."[1] "Considering the clear intent of the Act, the determining factor for judging whether a proposal [of the SLA] should be within the competitive range is if the offer can be made acceptable by conducting meaningful discussions….A proposal must be considered within the competitive range unless it is technically inferior or contains unduly high prices… that the possibility of being made acceptable through meaningful negotiations is precluded." *Id.* at 36. "When a proposal submitted by the SLA is determined to be within the competitive range, the contract will be awarded to the SLA." *Id.* at 37.

63.     Colorado has been providing satisfactory service at a fair price for over 15 years. Colorado submitted a bid lower than the government's own

---

[1]     Administration of the Randolph-Sheppard Vending Program by Federal Property Managing Agencies, May 1988 at 34.

estimate of a fair price to operate the contract. It was feasible they could operate the contract at a fair price.

64.   However, Schriever AFB failed to establish a competitive range for the Solicitation to even confirm that Colorado's price was reasonable. Instead, Schriever AFB ignored the Act's priority and added a 10% HUBZone preference to Colorado's proposed price. Although Schriever AFB admitted that Colorado's proposed price was 1.53% below the independent government estimate and that the price was "affordable and balanced," Schriever AFB nonetheless awarded the contract to the low bidder in violation of priority afforded by the Act.

65.   Furthermore, the primary cost of this contract is labor. The process for developing a reasonable price for labor is to determine the number of meals to be served, determine the staffing to accomplish the tasks necessary to serve the meals, and apply the union wage rates to the staffing.  The Act's regulations place a high degree of trust in the contracting officer when that contracting officer negotiates (conduct meaningful discussions) with Colorado consistent with the intent of the Act that the blind vendor should be given every opportunity to show he can operate the contract at a reasonable cost.  Labor rates are largely set by union contract. If Colorado were eliminated because of cost considerations, Defendants violated the Act by not placing Colorado within

21

the competitive range and conducting meaningful discussions with Colorado to determine if it were possible for Colorado to provide a fair price.

## B.   Colorado and its Blind Vendor will suffer irreparable harm if an injunction is not issued.

66.   Colorado will be irreparably harmed should Defendants transition this contract to another bidder before Colorado has an opportunity to pursue its arbitration rights under the Act. The food service contract at Schriever AFB represents a significant source of revenue for Colorado and its blind vendor. Sovereign immunity bars an award to Colorado or its blind vendor for monetary damages for a violation of the Act. Therefore, Colorado and its blind vendor have no recourse if Colorado is not able to enjoin Defendants from transitioning this contract pending the outcome of the arbitration.

67.   Additionally, Colorado will suffer irreparable harm that cannot be compensated in money damages should Defendants transition this contract before the DOE arbitration proceeding is concluded. Colorado will lose its status as the incumbent contractor and will also lose a substantial number of team members from its team of workers currently performing under the incumbent contract. Loss of incumbent status constitutes irreparable harm.

68.   Colorado would also be irreparably harmed if the transition moves forward on August 28 because the transition would permit the new company to

learn Colorado's confidential operational information and trade secrets. As part of the transition, the new contractor will be permitted to physically observe Colorado's operations, talk to employees and management, and obtain other confidential operational information, including confidential cost control and scheduling measures that it would not otherwise be able to obtain. This would prejudice Colorado and its teaming partner as that information could be used to their disadvantage in future competitive bidding situations

69.     Colorado will also suffer irreparable harm by being denied the contract priority right that Congress established for it under the Act. The denial of this right cannot be fully compensated by money damages. Furthermore, public policy favors economic stability and opportunities for the blind, matters not otherwise compensable by monetary damages.

**C.     Granting the injunction will not cause harm to others.**

70.     There will not be substantial harm to Defendants or others during the time a preliminary injunction is in effect. Colorado can and will continue to provide all required full food services at Schriever AFB until such time as the DOE arbitration concludes and will do so under the terms of the incumbent contract.

71.     This does not prejudice Defendants or require that Defendants

violate other procurement laws since the Act expressly permits Defendants to enter into direct negotiations with Colorado for continued services, if necessary. *See* 34 C.F.R. § 395.33(d).

### D. Impact of an injunction upon the public interest.

72. The impact on the public's interest is adverse only if a preliminary injunction is not issued. During the time an injunction is in place, the immediate "public", that is, Defendants, will continue to receive the same full food services from Colorado that it currently receives. Benefits to the wider public would continue to be served during the time an injunction is in effect, as the purposes of the Act to provide gainful employment for qualified blind vendors would continue to be fulfilled.

73. Furthermore, the public interest is met by allowing Colorado the time necessary to resolve its dispute with Defendants through the arbitration procedure mandated by Congress under the Act. Here, the only effect of granting a temporary restraining order and preliminary injunction will be to preserve the status quo pending the outcome of the arbitration with Defendants. Thus, all the equities and other relevant factors weigh heavily in favor of granting the requested injunction. Colorado has everything to lose if this relief is not granted, but Defendants will lose nothing if an injunction is granted.

74.     For the foregoing reasons, Colorado respectively submits that no bond or security is necessary for a Preliminary Injunction to issue and requests that such requirement under FED. R. CIV. PROC. 65(c) be waived.

## VIII. PRAYER

Colorado seeks the following relief with this Complaint:

1.  A temporary restraining order and preliminary injunctive relief which enjoins Defendants, its agencies and departments, from continuing with the ongoing procurement activity identified in Solicitation No. FA255020R0010, including making any transition in connection with the Solicitation until such time as the DOE arbitration proceeding required by the Act is concluded; and

2.  Colorado also requests such relief as this Court deems just and appropriate.

Dated:     August 25, 2020.

Respectfully submitted,

PHILIP J. WEISER
Attorney General

/s/ Katie Allison
_Katie Allison_, 39430
Senior Assistant Attorney General
_John August Lizza_, 14771
First Assistant Attorney General
Office of the Colorado Attorney General
State Services Section
1300 Broadway, 6th Floor

25

Denver, CO  80203
Telephone:  720.508.6158, 720.508.6160
john.lizza@coag.gov
katie.allison@coag.gov

Attorneys for Plaintiff the State of Colorado

## CERTIFICATE OF SERVICE

I certify that I served the foregoing Complaint upon all parties herein by e-filing with the CM/ECF system maintained by the court, or by electronic mail, or by depositing copies of same in the United State mail, first-class postage prepaid, at Denver, Colorado, this 25th day of August, 2020 addressed as follows:

Jane E. Bobet
Assistant United States Attorney
United States Attorney's Office
1801 California Street, Suite 1600
Denver, CO 80202
jane.bobet@usdoj.gov

/s/ *Susan Gowan*
*Original signature on file at the*
*Colorado Attorney General's Office*

27